O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **JUAN MORENO,** | ) | NO. EDCV 12-00584-MAN |
| | ) | |
|         **Plaintiff,** | ) | |
| | ) | MEMORANDUM OPINION |
|         v. | ) | |
| | ) | AND ORDER |
| **CAROLYN W. COLVIN,**[1] | ) | |
| **Acting Commissioner of Social** | ) | |
| **Security,** | ) | |
| | ) | |
|         **Defendant.** | ) | |
| _____ | ) | |

     Plaintiff filed a Complaint on April 24, 2012, seeking review of the denial of plaintiff's application for a period of disability and disability insurance benefits ("DIB"). On May 22, 2012, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on July 8, 2013, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, and is substituted in place of former Commissioner Michael J. Astrue as the defendant in this action. (*See* Fed. R. Civ. P. 25(d).)

payment of benefits; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for a period of disability and DIB on October 27, 2008. (Administrative Record ("A.R.") 15.) Plaintiff, who was born on August 29, 1962,[2] claims to have been disabled since June 20, 2007, due to neck and back injuries and "nerves." (A.R. 67, 73, 112.)[3] Plaintiff has past relevant work experience as a warehouse worker. (A.R. 21.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 67-71, 73-77), plaintiff requested a hearing (A.R. 79-80). On April 22, 2010, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Milan M. Dostal (the "ALJ"). (A.R. 361-89.) Vocational expert Victoria Rae also testified. (*Id.*) On July 16, 2010, the ALJ denied plaintiff's claim (A.R. 15-22), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 2-7). That decision is now at issue in this action.

---

[2] On the alleged disability onset date, plaintiff was 44 years old, which is defined as a younger individual. (A.R. 21; citing 20 C.F.R. § 404.1563.)

[3] In the Joint Stipulation, plaintiff also alleges disability due to "cervical disc disease, failed cervical spinal surgery, morbid obesity, depression, and anxiety." (Joint Stipulation ("Joint Stip.") at 2.)

**SUMMARY OF ADMINISTRATIVE DECISION**

In his July 16, 2010 decision, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2011, and he has not engaged in substantial gainful activity since June 20, 2007, the alleged onset date of his disability. (A.R. 17.) The ALJ determined that plaintiff has the severe impairments of cervical disc disease and obesity, but he does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (*Id.*)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with certain limitations. (A.R. 18.) Specifically, the ALJ found that, plaintiff could:

> lift and carry 20 pounds occasionally, 10 pounds frequently; sit and stand at option; occasionally climb ladders; all other postural movements can be done frequently; moderate pain symptoms in back, neck, arms, and hands with occasional hand numbness but can be controlled with appropriate medications; and slight depression with a slight memory loss but can be controlled with medication with no side effects; and a sleep disorder that has a slight affect on his work activity and can be controlled with appropriate medications.

(*Id.*)

The ALJ found that plaintiff was unable to perform his past relevant work as a warehouse worker. (A.R. 21.) However, based upon his RFC assessment for plaintiff and after having considered plaintiff's age, education,[4] work experience, and the testimony of the vocational expert, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform," including the jobs of "Assembler, small parts" and "Ticket Taker." (A.R. 21-22.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, from June 20, 2007, the alleged onset date, through July 16, 2010, the date of the AlJ's decision. (A.R. 22.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

---

[4] The ALJ found that plaintiff has a limited education and is able to communicate in English. (A.R. 21.)

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff claims the ALJ erred by not: (1) affording greater weight to the opinion of Israel Rottermann, plaintiff's treating physician; and (2) finding that plaintiff' impairments equaled Listing

1.04.  (Joint Stip. at 3.)

### I. The ALJ Failed To Set Forth Appropriate Reasons For Rejecting The Opinion Of Plaintiff's Treating Physician.

It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical testimony. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to observe the claimant. Magallanes, 881 F.2d at 751.  When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  When contradicted by another doctor, a treating physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*

On October 17, 2007, plaintiff underwent a complete orthopedic evaluation by Israel Rottermann, M.D, an orthopedic and hand surgeon. (A.R. 218-25.)  Dr. Rottermann noted that plaintiff's conversation and head movement were slow and that plaintiff had tenderness in the mid

thoracic area, tenderness to palpation in the cervical spine and left shoulder, tightness in the trapezius musculature, restricted motion in the cervical spine and left upper extremity, complaints of left arm pain, and positive impingement sign on his left shoulder. (A.R. 221-23.) Dr. Rottermann also noted that an x-ray of plaintiff's cervical spine showed spurring and a decrease of the cervical lordosis, and an x-ray of the left shoulder showed slight spurring at the AC joint. (A.R. 223.) Dr. Rottermann reviewed plaintiff's medical records and noted that, while a CT scan of plaintiff's head was negative, Dr. Allen, a neurologist, diagnosed plaintiff with post-traumatic headaches and cervical strain, prescribed pain medication, and recommended that plaintiff perform modified duties. (A.R. 224.) Based upon his physical examination of plaintiff, the results of the diagnostic examinations performed, and a review of plaintiff's medical records, Dr. Rottermann diagnosed plaintiff with: (1) "[s]tatus post concussion with head trauma, and ongoing headaches"; (2) "[c]ervical strain with left arm symptoms"; and (3) "[l]eft shoulder strain/tendinitis, with impingement." (A.R. 223.) Dr. Rottermann recommended that plaintiff have an MRI of his cervical spine and opined that plaintiff was temporarily totally disabled. (*Id.*)

On January 2, 2008, Dr. Rottermann re-evaluated plaintiff. (A.R. 274-76.) Dr. Rottermann reviewed plaintiff's recent MRI of his cervical spine, which showed: "[a] 2 to 2.5 mm., central and left paramedian disc protrusion at C4-5 with mild central and left root canal narrowing"; "a 2 to 2.5" mm., central and right paramedian disc protrusion, with an endplate ridge complex at C5-6, with mild central and mild to moderate right nerve root canal narrowing"; and "a 3 mm.,

7

based protrusion at C6-7 with central effacement and bilateral foraminal narrowing." (A.R. 274-75.) Dr. Rottermann noted that plaintiff was "quite symptomatic" and recommended that plaintiff be seen by a pain management physician to address his persistent neck pain with ongoing headaches and dizziness. (A.R. 275.) Dr. Rottermann opined that plaintiff was temporarily totally disabled. (*Id.*)

On April 16, 2008, Dr. Rottermann conducted an orthopedic re-evaluation of plaintiff. (A.R. 301-04.) In addition to plaintiff's pain medication, Dr. Rottermann recommended that plaintiff receive epidural injections for his pain. Dr. Rottermann noted that plaintiff continues to experience "neck pain and headaches, with no improvement in his condition." (A.R. 302.) Plaintiff was assessed as being temporarily totally disabled. (*Id.*)

In an August 13, 2008 orthopedic re-evaluation of plaintiff, Dr. Rottermann noted that plaintiff "continues to have persistent headaches, and neck and radicular type pain." (A.R. 308.) In addition, plaintiff reported "becoming depressed," and Dr. Rottermann prescribed him medication. (A.R. 309.) Dr. Rottermann recommended that plaintiff undergo a second epidural injection and opined that plaintiff was "temporarily totally disabled." (*Id.*)

On June 12, 2009, Dr. Rottermann assessed plaintiff's RFC. Dr. Rottermann opined, *inter alia*, that plaintiff: would experience pain or other symptoms which would interfere constantly with his attention and ability to concentrate; could walk one city block without rest; could sit/stand for 15 minutes at a time; could sit for a total of three

hours, stand for a total two hours, and walk for a total of three hours during an eight hour day; needs to alternate periods of walking around during an eight-hour workday; needs to shift positions at will from sitting, standing, or walking; needs to take unscheduled breaks during the workday; should elevate his leg(s) for half of the workday; can frequently and occasionally lift and carry 10 pounds; can perform repetitive fingering and handling for 50 percent of the workday and repetitive reaching for 30 percent of the day; can bend and twist at the waist for 10 percent of the workday; and can expect to be absent about once a month as a result of his impairments and treatment. (A.R. 254-56.) Further, Dr. Rottermann opined that plaintiff's impairments could be expected to last at least 12 months (A.R. 253), and Dr. Rottermann noted that plaintiff needed spinal surgery (A.R. 252).[5]

In his decision, the ALJ gave little weight to the opinion of Dr. Rottermann, because his opinion was not consistent with the objective medical evidence of record. (A.R. 20.) Specifically, the ALJ noted that: (1) the sitting, standing, and walking limitations assessed by Dr. Rottermann were inconsistent with the medical record, because plaintiff had "no involvement of the lumbar spine"; and (2) Dr. Rottermann's diagnosis of "'status post concussion with head trauma'" was inconsistent with the medical record, because plaintiff "was noted as not having head trauma as the computerized tomography scan of the head following his workplace injury was normal." (*Id.*)

---

[5] On April 12, 2010, Dr. Rottermann again assessed plaintiff's RFC. (A.R. 333-37.) As the ALJ noted in his decision, Dr. Rottermann's April 12, 2012 RFC assessment was identical to his previous, June 12, 2009 assessment. (A.R. 20.)

9

The ALJ's first reason for giving little weight to Dr. Rottermann's opinion is unavailing. While it is true that plaintiff does not have a lumbar spine impairment, plaintiff has other impairments which could limit the duration of time he can sit, stand, and walk. For example, plaintiff has a cervical spine impairment for which surgery has been recommended, is obese, and suffers from headaches and pain in his neck, shoulders, and back. Indeed, in view of plaintiff's pain symptoms alone, the ALJ "afforded [plaintiff] the opportunity to change position from sitting to standing at will" in his RFC assessment for plaintiff. (A.R. 19.) Clearly the ALJ's incorporation of an at will sit/stand option undermines, at least in part, his conclusion that a lumbar spine condition is required for any sitting, standing, and/or walking limitation. As such, the ALJ's reasoning cannot constitute a specific and legitimate reasons for affording Dr. Rottermann's opinion little weight.

The ALJ's second reason for affording Dr. Rottermann's opinion little weight is also unavailing. The ALJ found Dr. Rottermann's diagnosis of "'status post concussion with head trauma'" to be inconsistent with the objective medical evidence of record, because "the computerized tomography scan of [plaintiff's] head following his workplace injury was normal," and thus, "[plaintiff] was noted as not having head trauma." (A.R. 20.) As an initial matter, it is undisputed that, in June 2007, plaintiff suffered an on-the-job injury when at least one pallet fell on the left side of his head and neck.[6] (A.R. 19.)

---

[6] Plaintiff reported to Dr. Rottermann that "he was driving a forklift [and] working with a pallet jack [when] suddenly two pallets[, weighing approximately 20 pounds each,] fell from a height of 15 feet

Plaintiff reported feeling an "immediate sharp pain, 'like a migraine,' in his head. He also noted blurred vision." (A.R. 245.) As Dr. Rottermann noted in his October 17, 2007 examination notes, a CT scan of plaintiff's head was performed on July 17, 2007. (A.R. 224.) The results were negative. (*Id.*) In diagnosing plaintiff, however, Dr. Rottermann relied upon a July 26, 2007 report by Dr. Allen, a neurologist, who diagnosed plaintiff with *post-traumatic* headaches and cervical strain. (*Id.*; emphasis added.) Accordingly, while plaintiff's negative CT scan may not support Dr. Rottermann's diagnosis, Dr. Allen's diagnosis certainly does. Thus, the ALJ's reasoning cannot constitute a specific and legitimate reason for discrediting Dr. Rottermann's opinion.

For the aforementioned reasons, the ALJ failed to properly reject the opinion of Dr. Rottermann. On remand, the ALJ must provide reasons, if they exist, in accordance with the requisite legal standards for discrediting this physician's opinion.[7]

---

. . . [and] hit[] him on his head/neck region. He was dazed but reports he did not lose consciousness." (A.R. 219.)

[7] Moreover, it is not entirely clear upon whose medical opinion(s) the ALJ relied in assessing plaintiff's RFC and whether that opinion(s) was supported by substantial evidence. In his decision, the ALJ made no mention of the opinions of the State agency physicians and only stated that he gave "some weight" to the opinion of qualified medical examiner and orthopedic surgeon John Santaniello. (A.R. 20.) Specifically, the ALJ: (1) found Dr. Santaniello's opinion that plaintiff can lift no more than 35 pounds at a time to be "well within" his RFC assessment for plaintiff; and (2) rejected Dr. Santaniello's opinion that plaintiff was under a permanent disability, because it "encroach[ed] on the authority of the Commissioner." (*Id.*) Critically, however, the ALJ did not give *any* reason, let alone an appropriate reason, for rejecting Dr. Santiniello's opinion that plaintiff be limited to no repetitive movements of the cervical spine.

Further, as plaintiff properly asserts and the Commissioner

### II. On Remand, The ALJ Should Reconsider Whether Plaintiff's Impairments Equal Listing 1.04.

Based on the foregoing, there are several matters that the ALJ needs to review and reconsider on remand. As a result, the ALJ's conclusion regarding whether plaintiff's impairments equal Listing 1.04 may change. Accordingly, the Court does not reach plaintiff's second claim -- *to wit*, that the ALJ erred in finding that plaintiff's impairments do not equal Listing 1.04. To properly review and reconsider this issue, the ALJ must consider Dr. Rottermann's opinion properly and, if appropriate, should utilize the services of an impartial medical expert to determine if plaintiff's impairments medically equal Listing 1.04.[8]

///

---

does not contest, it does not appear that Dr. Santaniello reviewed plaintiff's complete medical record before examining plaintiff. *See* 20 C.F.R. § 404.1517 (noting that "[i]f we arrange for [a consultative] examination or test, . . . [w]e will also give the examiner any necessary background information about your condition"). Thus, it is unclear whether Dr. Santaniello based his assessment on a sufficiently complete picture of plaintiff's condition, giving due consideration to all relevant medical evidence of record. As a result, it does not appear that Dr. Santaniello's opinion is supported by substantial evidence.

Accordingly, as this case is being remanded for the reasons set forth *supra*, the ALJ should revisit his consideration of the various medical opinions on remand. In so doing, the ALJ may determine that a consultative examination, based upon a *complete* review of the medical record, is appropriate under the circumstances.

[8] In his decision, the ALJ rejected plaintiff's claim that his impairments equaled a listing, because "in order to medically equal a listing, a medical expert must testify that the impairments, in combination, medically equal a listing . . . . [and] no impartial medical expert was associated with the case to testify that [plaintiff]'s impairments medically equal a listing." (A.R. 18.) Accordingly, the ALJ concluded that "[plaintiff's] impairments cannot be said to medically equal a listing." (*Id.*)

**III. Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See* Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003)(affirming remand order based, in part, on ALJ's failure to provide adequate reasons for rejecting claimant's treating physicians' opinions). On remand, the ALJ must correct the above-mentioned deficiencies and errors. After doing so, the ALJ may need to reassess plaintiff's RFC, in which case additional testimony from a vocational expert likely will be needed to determine what work, if any, plaintiff can perform.

///
///
///
///

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 4, 2013

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE